IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**HERMAN LONGINO** **PLAINTIFF**

vs. **CAUSE NO. 3:13-CV-167-CWR-FKB**

**HINDS COUNTY, MISSISSIPPI, by and through its
Board of Supervisors, HINDS COUNTY SHERIFF,
TYRONE LEWIS, in his official capacity; JOHN and
JANE DOES 1-24** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants Hinds County, Mississippi, by and through its Board of Supervisors, and Sheriff Tyrone Lewis, in his official capacity, motion to dismiss [Docket No. 41] and motion for summary judgment [Docket No. 61]. Plaintiff failed to respond to the motion to dismiss, but he did oppose the motion for summary judgment, *see*, Docket No. 64, to which the defendants filed a reply. Docket No. 67. Having considered the motions and responses, where filed, and being fully advised in the premises, the Court finds that the motions should be granted.

**I. BACKGROUND**

Plaintiff Herman Longino invokes the Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343, alleging that Defendants violated federal and state laws upon his arrest and subsequent incarceration at the Hinds County Detention Center in Raymond, Mississippi. *See* Plaintiff's Complaint, Docket No. 1, at 3-4 (hereinafter, "Complaint"). The undisputed facts are as follows:

On July 22, 2004, Longino pleaded guilty to 27 counts of false pretenses before the County Court of Hinds County, Mississippi, First Judicial District. *See* Docket No. 61-3, Exhibit C (hereinafter, "Sentencing Orders"). He was sentenced to three months in the custody of the Hinds County Sheriff's Department, three months suspended, and three months supervised probation;

1

the sentences were imposed to run consecutively on each count. *Id*. The court ordered Longino to pay restitution as part of his sentence for issuing bad checks. *Id*. Longino made initial payments pursuant to the sentencing orders but eventually stopped in violation of his probation. Plaintiff's Deposition, Docket No. 61-7, at 53-55 (hereinafter, "Pl.'s Dep.").

A warrant for Longino's arrest was issued for not paying restitution for bad checks. Pearline Campbell, the Bad Check Coordinator for the Hinds County District Attorney's Office, testified that "[i]n or around April 2010, [she] received notification that a motion to revoke Herman Longino's probation had been filed with the County Court of Hinds County . . . that the Court had issued a warrant for the arrest of Longino and that bond had been set for $35,000."[1] Docket No. 61-9. The warrant issued by the Court was based on an *ore tenus* motion presented to the court by the District Attorney's office on April 23, 2010. *See* Order Extending Probation, Docket 61-5. After receiving notice that a warrant was issued for Longino's arrest, Campbell avers that she personally spoke with Longino and informed him of the revocation motion, the warrant which had been issued and the bond amount.[2] Moreover, Campbell contends that she advised Longino that he needed to make restitution in order to avoid arrest. Docket No. 61-9. But this did not prompt Longino to make any payments.

In September 2011, after having been stopped at a roadblock, Longino was arrested. Docket No. 61-7, at 57-58. He contends he was taken to jail (to the Hinds County Detention Center) where he remained for five to six months before he first saw Pearlene Campbell. *Id*. at 57. When he finally met with Campbell, she told him to "[g]ive her that money or go to jail . . . go to

---

[1] Campbell's affidavit states that she served as Coordinator in "2011." Docket No. 61-9. at ¶ 2. Because she proceeds to describe events in 2010, the Court assumes that her reference to "2011" is a clerical error and that she in fact held the position in 2010.

[2] Longino, however, denies having been informed of a bond amount. Docket No. 61-7, at 56.

prison." *Id*. at 58.[3] Subsequently, Longino was returned to the Hinds County Detention Center. *Id*. Although Campbell contends that she "continued to speak with Longino," that is contradicted by Longino's testimony. But what has not been contradicted is Campbell's contention that she also spoke with Longino's wife and his pastor about "Longino either making payments towards restitution or posting bond." *Id*. Longino, she contends, "chose not to do either." *Id*. It was not until March 2012 that Campbell had Longino's case brought before the Hinds County Court, which entered an order extending his probation. The Order was signed on March 13 and entered on March 15. Docket No. 61-5. Campbell avers that she had Longino's case (but apparently not Longino) brought before the court on March 15. Docket No. 61-9. What is generally undisputed is that before March, neither Campbell nor anyone in the district attorney's office brought Longino before a judge from the date of his arrest, and he remained in jail until March 26, 2012.

**Procedural History**

On March 20, 2013, Longino filed the instant action against Defendants Hinds County and Hinds County Sheriff Tyrone Lewis in his official capacity, alleging that his state and federal law rights were violated because, after his arrest, he was unlawfully incarcerated for more than 187 days until he appeared before a judge. In his complaint, Longino listed the following constitutional violations related to his arrest and subsequent incarceration: equal protection rights under the Fourteenth Amendment; right to notice of accusations under the Sixth and Fourteenth Amendments; right against unreasonable seizure under the Fourth and Fourteenth Amendments; right to procedural and substantive due process of the law under the Fifth and Fourteenth Amendments; right to confront witnesses under the Sixth and Fourteenth Amendments; right to compulsory process under the Sixth Amendment; right to counsel under the Sixth and Fourteenth Amendments; right to be free from cruel and unusual punishment under the Eighth and

---

[3] From his testimony, Longino refers to prison as the Hinds County Detention Center. Docket No. 61-7, at 58.

Fourteenth Amendment; and right to reasonable bail under the Eighth Amendment. In addition, Plaintiff alleged a cause of action against Defendants for conspiracy to interfere with his civil rights under 42 U.S.C. § 1985.

## II. DISCUSSION

### A. Motion to Dismiss

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id*. (citation and quotation marks omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. (citation omitted).

Since *Iqbal*, the Fifth Circuit has clarified that the Supreme Court's "emphasis on plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n. 44 (5th Cir.2011).

#### 1. State Law Claims

Defendants filed a motion to dismiss Plaintiff's state law claims and punitive damages claim on February 17, 2014. Docket No. 41. Plaintiff has not responded, and the Court will rule on Defendants' motion without the benefit of Plaintiff's arguments.

      **i.**    **False Imprisonment and Intentional and Negligent Infliction of Emotional Distress Claims**

In his complaint, Longino brought state law claims against Defendants for false imprisonment, and intentional and negligent infliction of emotional distress. Defendants argue that Longino's state law claims are barred by the Mississippi Tort Claims Act (MTCA), which immunizes "a governmental entity and its employees acting within the course and scope of their employment or duties" against claims brought by "any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed." Miss. Code. Ann. § 11-46-9(1)(m).

As Defendants point out, all of Longino's state law claims "are for acts or omissions alleged to have occurred while [Longino] was a pretrial detainee in the Raymond Detention Center." Defendants' Memo in Supp. of Mot. to Dismiss, Docket No. 42, at 4. Under the MTCA, it does not matter whether Longino was detained lawfully or unlawfully. *See Brooks v. Pennington*, 995 So.2d 733 (Miss. Ct. App. 2007) ("In granting immunity from claims brought by an inmate, Section 11-46-9(1)(m) does not distinguish between those lawfully and those unlawfully within the custody of the state."). Because Longino has not put forth any facts demonstrating that the officials in question were not acting within the scope of their employment, nor has he disputed the fact that he was incarcerated at the time his allegations arose, Longino's state law claims are dismissed with prejudice. *Liggans v. Coahoma Cnty. Sheriff's Dep't*, 823 So. 2d 1152, 1155 (Miss. 2002) (ruling that the jail inmate exemption also applies to pretrial detainees (citing *Jones v. City of Jackson*, 203 F.3d 875 (5th Cir. 2000))).

      **ii.**    **Punitive Damages**

Defendants argue that, under well-established federal law, Plaintiff's claim for punitive damages is barred. *See* Docket No. 41 (citing *Stern v. Hinds Cnty., Miss.*, 436 F. App'x 381, 382 (5th Cir. 2011)) (ruling that, under section 1982, punitive damages cannot be recovered from Hinds County, a governmental entity (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981))). Here, Longino has sued Hinds County's Sheriff in his official capacity. As the Fifth Circuit Court of Appeals notes in *Stern*, because an official capacity claim is, effectively, a suit against the governmental entity, Longino is barred from recovering punitive damages in this suit. *See id.* (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). Thus, Plaintiff's claim for punitive damages is dismissed.

### B. Motion for Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When confronted with these motions, the Court focuses on "genuine" disputes of "material" facts. A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The Court will "view the evidence and draw reasonable inferences in the light most favorable to the non-movant," *Maddox v. Townsend & Sons, Inc.,* 639 F.3d 214, 216 (5th Cir. 2011) (citations omitted), but

unsubstantiated assertions are not competent summary judgment evidence, *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994).

### 1. Federal Law Claims

Longino's complaint muddles his claims under section 1983 by lumping together constitutional violations without clearly articulating what actions led to the specific constitutional right of which he was deprived. As a result, the Court's task in analyzing Longino's claims has been made more arduous. Plaintiff's vague assertions of the federal rights allegedly violated, without sufficiently connecting them to an identifiable action, hobbles the Court in its ability to properly analyze Plaintiff's federal law claims under section 1983. Notwithstanding Plaintiff's lack of clarity in properly delineating his claims under section 1983, the Court has determined—from what it has gleaned from the record—that Longino's alleged Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment violations emanate from a single incident caused by the Defendants: the incarceration of Longino for more than 187 days without appearing before a judge.

Unfortunately for Longino, most of his allegations are too general and overly broad to meet the various standards for which each violation requires in order for them to be maintained.[4] The only claims in which Plaintiff attempts to analyze under its appropriate standard with specificity are his claims against Hinds County—that the constitutional violations inflicted upon him are the

---

[4] It should be noted that Longino's Eighth Amendment claim, which protects *convicted* prisoners, and, his Fifth Amendment "due process" claim, which is limited in scope to actions of the federal government, cannot survive under the facts alleged. *See Santibanes v. City of Tomball, Tex.*, 654 F.Supp.2d 593, 608 (5th Cir. 2009) (citations omitted). Similarly, Defendants have argued that Plaintiff's conspiracy claim under 42 U.S.C. § 1985 must be dismissed, because he has provided nothing more than conclusory allegations in support of this claim. Plaintiff has not responded. "Failure to address a claim results in the abandonment thereof." *Sanders v. Sailormen, Inc.*, No. 3:10-cv-606-CWR-LRA, 2012 WL 663021, *3 & n. 30 (S.D. Miss. Feb. 28, 2012) (collecting cases), *aff'd*, 12-60224, 2013 WL 69354 (5th Cir. Jan. 7, 2013). Furthermore, Longino has not asserted or proved that the alleged conspiracy was motivated by class-based animus. *See Galloway v. State of La.*, 817 F.2d 1154, 1159 (5th Cir. 1987) (noting that the common attribute must consist of an inherited or immutable characteristic such as gender, race, religion or national origin). Consequently, the conspiracy claims brought pursuant to § 1985 must be dismissed.

result of a practice, custom, or policy of Hinds County, and that Hinds County is liable under section 1983 for failure to train. Thus, all other claims alleged initially in Longino's complaint must be summarily dismissed. The Court will now turn to Longino's governmental liability claims under section 1983.

### i. Governmental Liability

Longino asserts his section 1983 claims against Hinds County and Sheriff Tyrone Lewis in his official capacity; however, a suit against an officer in his or her official capacity is simply another way of suing the public entity that the official represents. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). Longino claims that Hinds County has an unconstitutional practice of arresting individuals owing amounts in restitution on bad checks, and holding them until the amount is paid without first allowing them to appear before a judge.

A governmental entity is not liable under 42 U.S.C. § 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 698 (1978). In order for a plaintiff to hold a municipality liable under § 1983, the plaintiff must prove three elements: 1) a policymaker that can be charged with actual or constructive knowledge of 2) an official policy (or custom), and 3) a "violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell* 436 U.S. at 658, 694, 698). In *Gates v. Texas Dep't of Protective & Regulatory Serv.*, the Fifth Circuit explained that:

> A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.

537 F.3d 404, 436 (5th Cir. 2008) (citations omitted). "Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *aff'd on reh'g*, 739 F.2d 993 (5th Cir. 1984) (en banc). "Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy." *Id*. Plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Piotrowski*, 237 F.3d at 581 (citing *Bennet*, 728 F.2d at 762, 768 n.3).

In response to Plaintiff's claim, Defendants argue that Longino has not shown that a governmental custom, policy, or usage of Hinds County was the "moving force" behind any deprivation of Longino's federal rights. The only evidence of a policy was presented through the affidavit of Captain Steve Bailey, the captain over policies, standards and practices for the Sheriff's Department. Docket 61-10. General Orders of the Department provide the policy which directs the officers regarding the arrest of individuals with and without a warrant. General Order 92-04-01 provides, in part:

> Anytime a Law Enforcement Agency requests service of warrants over the NCIC, common practice will require a copy of the warrant to be sent over by fax if time permits. If a copy is not available, the NCIC printout will serve as the Sheriff's Office copy of the warrant and shall be attached to the report. As soon as practical, Communications, Investigations, or the Warrants Division will be responsible for follow up in these matters.

*Id*. at 7. A separate part of the policy sets forth the duties of an administrative lieutenant who is also the court liason officer. That person is tasked with the responsibility of "mov[ing] all

misdemeanor inmates through the system, from the time they are booked into the jail to court, and on to the Farm, RDC [Resititution Detention Center] or JDC [Juvenile Detention Center]." *Id*. at 15. The administrative lieutenant "[f]ollows inmates and assist[s] in their movement through the system. Assist[s] in getting attorneys, new court dates, bonds set, [and] being released." *Id*. That person also "[a]ssist[s] all the courts, court administrator, attorneys, District Attorney and other parts of system and agents on all parts of getting paperwork to where it is to go and that it is correct." *Id*. Among the officer's other duties, the lieutenant is also responsible for "[h]andl[ing] calls from family, friends of inmates and law enforcement officers, attorneys, or other agencies etc." *Id*.

Clearly Hinds County has a policy in place, which, if followed, may have prevented the miscarriage of justice heaped upon Longino. It appears that some employees may not have carried out their duties and thus were negligent. But the failure to follow policy does not amount to a constitutional violation. *Myers v. Klevenhagen*, 97 F.3d 91. 94 (5th Cir. 1996). The county or the sheriff cannot be held liable for the actions of employees under a *respondeat superior* theory of liability. *Monell*, 436 U.S. 658, 691. *See also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) ("A municipality may not be subject to liability merely for employing a tortfeasor."). The county is only liable if Longino shows that some policy or custom of the city proximately caused his injury. *Piotrowski,* 51 F.3d at 517. Also, Longino must show that the policy was adopted with "deliberate indifference to the known or obvious fact that such constitutional violations would result." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). Simply put, "[m]unicipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation." *Zarnow*, 614 F.3d at 167 (citation omitted).

Having failed to identify a policy, Longino argues that the county, through its widespread customs and practices of allowing arrestees to remain in jail without bringing them before a judge, should be held liable. To support his argument, Longino wraps his arms around a 2002 decision of the Hinds County Circuit Court. In *Bailey v. State of Mississippi*, Civil Action No. 01-4756 (Hinds County Circuit Court Jan. 30, 2002), the petitioner was arrested and jailed for seventeen misdemeanor violations of Mississippi's False Pretense/Bad Check law. Docket No. 64-1. Upon Bailey's arrest, Danny Perry, a non-lawyer who oversaw that unit in the District Attorney's Office, informed Bailey "that she could get out and avoid further incarceration by paying restitution." *Id*. Although Bailey requested information about a payment plan because of her inability to pay the full amount owed, Perry told her that there was no payment plan and "that [she had to] 'pay or stay.'" *Id*.

When Bailey was taken before the justice court judge, the District Attorney informed the court that Bailey had executed a waiver of attorney form, and the court promptly sentenced her to 4 1/2 years and ordered her to pay the restitution before she could be released. *Id*. at 3. The circuit court, however, found that Bailey had never been informed of her right to assistance of counsel, she was not offered appointed counsel, and that she was "specifically, erroneously and wrongfully told that she was *not* entitled to an appointed attorney." *Id*. at 4 (emphasis in original). The court noted that the waiver executed was invalid and a "complete travesty." *Id*. at 5. The court also declared that the "petitioner may not legitimately be ordered to pay restitution while in jail or have her incarceration extended for her failure to pay restitution while serving her time." *Id*. at 7. "Such a scheme," the court continued, "not only defies common sense, it is illegal." *Id*. The court concluded that the activity before it amounted to a "debtor's prison long ago forbidden." *Id*.

Longino's reliance on this case is misplaced. Unlike Bailey, Longino had appeared before a court, and he was convicted and sentenced. The terms of Longino's sentencing included an obligation to pay restitution which, if not followed, could result in incarceration. When Longino failed to comply with the terms of his sentence, an arrest warrant was issued at the request of the District Attorney, and he was jailed and not taken before a judge until 187 days after his initial arrest. These set of facts are different from *Bailey* where, before being prosecuted or sentenced, the plaintiff was illegally told to pay or she would simply be incarcerated. As previously stated, Hinds County's alleged failure to allow Longino to appear before a judge is the source of his Section 1983 claim.[5]

Although Longino relies on the *Bailey* case filed in state court, Hinds County points this Court to *Bailey v. Hinds County, Mississippi*, Civil Action No. 3:01cv641 (S.D. Miss. 2003), a case decided by my colleague, Hon. Tom S. Lee. There, Bailey, having been successful in her state court case, was the lead plaintiff in a class action filed against Hinds County and the State of Mississippi challenging the constitutionality of Mississippi's Bad Check Law and the policies and practices of the Hinds County District Attorney's Office in the handling of bad check cases. Slip op. at 4. Those practices and procedures, as explained in the circuit court case, included "pay or stay," the denial of counsel, and other violations.

The learned judge correctly rejected plaintiff's contention that Hinds County could be held liable for the practices and procedures of the District Attorney's Office, which is a state entity. Hinds County had no policymaking authority or control over the District attorney's office, and it

---

[5] It is important to note, however, that both Bailey and Longino faced prosecution by the district attorney's office; warrants for their arrests had been issued by that office; and, while the Sheriff was responsible for acting on the warrant and arresting Longino (for failing to abide by his restitution order or violating his sentence), the district attorney's office was responsible for making sure that Longino was brought before the court to answer for those violations.

had no involvement in the events or circumstances giving rise to plaintiff's claims. *Id*. at 5. Furthermore, Judge Lee concluded that although Danny Perry was "nominally or technically a county employee since his paycheck came from Hinds County," he was "for all purposes an employee of the District Attorney's office." *Id*. at 7. Perry was hired by, worked for, supervised by, answerable to and subject to termination by the District Attorney. Judge Lee explained:

> [L]iablity cannot be imposed against the County, consistent with *Monell*, for decisions made or actions taken by Perry on the basis of nothing more than the fact that the County issued him a paycheck, for which it was reimbursed by the District Attorney's office. Perry manifestly was not acting pursuant to, nor can his actions be said to have constituted policies, procedures, customs or policies of Hinds County because he, in fact, worked not for the county but for the District Attorney's Office, which is indisputably a state agency.

*Id*. at 8. The conclusions reached by Judge Lee belie Longino's assertion that there has been a twelve-year history of similar violations and that *those violations were part of Hinds County policy and practices*.[6] Other than *Bailey*, Plaintiff has submitted no other evidence to support his allegations of an unconstitutional Hinds County policy. Without that showing, his claim must fail.

Longino's failure to train claim against Hinds County must not survive summary judgment for similar reasons. In order to establish liability for this claim, Longino must show (1) inadequate training procedures; (2) that inadequate training policy was a "moving force" in causing violation of the plaintiff's rights; and (3) deliberate indifference in adopting the training policy. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) (citations omitted).

---

[6] Plaintiff also submitted affidavits that included photocopies of booking information collected from a computer screen displaying the arrest and release information of defendants who were, according to Plaintiff, forced to stay in jail unless they paid restitution for writing bad checks. The Court notes that this evidence—as Defendants discuss in its reply to Plaintiff's response to motion for summary judgment, Docket No. 67—is inapplicable because the individuals arrested were either not similarly situated—as with the plaintiff in *Bailey*—or the alleged violation against these individuals occurred *after* Longino's incarceration. Moreover, Longino has made no attempt to explain how each screenshot containing booking information relates to his specific cause of action. Therefore, the Court determines that the affidavits do not provide evidence in support of Longino's claim.

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action . . . Deliberate indifference implies an official's actual knowledge of facts showing that a risk of serious harm exists as well as the official's having actually drawn that inference. . . Deliberate indifference is more than mere negligence or even gross negligence. Proof of deliberate indifference normally requires a plaintiff to show a pattern of violations and that the inadequate training or supervision is obvious or obviously likely to result in a constitutional violation.

*Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) (quotations and citations omitted). Except for generally alleging that he has made a prima facie case that "Hinds County adopted a custom of illegally detaining individuals with objective indifference," Docket No. 65 at 5, Longino has provided no further evidence to raise a fact issue related to Hinds County's alleged liability under section 1983 showing inadequacy of training. The unrefuted evidence is that "[t]he policies and procedures of the Hinds County Sheriff's Department which were in effect in 2011 were in compliance with those established by the Mississippi Law Enforcement Officers Training Program of the State of Mississippi"; that the Sheriff's Department required mandatory training; and that all officers were to complete the basic training program as overseen by the Department's Training Coordinator. Docket No. 61-10. Moreover, Longino has not demonstrated that the alleged failure to train was causally connected to the constitutional injury. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). The Court thus concludes that Hinds County is entitled to summary judgment on this claim.

### III. CONCLUSION

Based on the foregoing, the Court hereby GRANTS Defendants' motion to dismiss Plaintiff's state law claims and motion for summary judgment on Plaintiff's remaining federal law claims.

**SO ORDERED**, this the 11th day of September, 2014.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE